FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 19, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

CAROLYN D. H-C.                    )  No. 1:19-CV-3247-LRS
                                   )
              Plaintiff,           )  **ORDER GRANTING**
                                   )  **PLAINTIFF'S  MOTION FOR**
       vs.                         )  **SUMMARY JUDGMENT,**
                                   )  *INTER ALIA*
                                   )
COMMISSIONER OF SOCIAL             )
SECURITY,                          )
                                   )
                                   )
              Defendant.           )
_____  )

**BEFORE THE COURT** are the Plaintiff's Motion For Summary Judgment (ECF No. 15) and the Defendant's Motion For Summary Judgment (ECF No. 17).

## JURISDICTION

Carolyn D. H-C., Plaintiff, applied for Title II Disability Insurance benefits (DIB) on November 13, 2014, and for Title XVI Supplemental Security Income benefits (SSI) on April 21, 2015.  The applications were denied initially and on reconsideration.  Plaintiff timely requested a hearing which was held on June 12, 2018 before Administrative Law Judge (ALJ) C. Howard Prinsloo.  Plaintiff testified at the hearing, as did Vocational Expert (VE) Merrill Cohen.  On September 6, 2018, the ALJ issued a decision finding the Plaintiff not disabled.  The Appeals Council denied a request for review of the ALJ's decision, making that decision the Commissioner's final decision subject to judicial review.  The Commissioner's final decision is appealable to district court pursuant to 42 U.S.C. §405(g) and §1383(c)(3).

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 1**

1

## STATEMENT OF FACTS

2    The facts have been presented in the administrative transcript, the ALJ's
3   decision, the Plaintiff's and Defendant's briefs, and will only be summarized here.  At
4   the time of the administrative hearing, Plaintiff was 60 years old.   She has past
5   relevant work experience as an aircraft structure assembler, order filler, animal
6   caretaker, aircraft production painter, laborer, and assembly line inspector.   Plaintiff
7   alleges disability since May 15, 2014, on which date she was 56 years old.  Plaintiff's
8   date last insured for Title II benefits was December 31, 2019.

9

10

## STANDARD OF REVIEW

11    "The [Commissioner's] determination that a claimant is not disabled will be
12   upheld if the findings of fact are supported by substantial evidence...."  *Delgado v.*
13   *Heckler*, 722 F.2d 570, 572 (9th Cir. 1983).  Substantial evidence is more than a mere
14   scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less
15   than a preponderance.  *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989);
16   *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir.
17   1988).   "It means such relevant evidence as a reasonable mind might accept as
18   adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91
19   S.Ct. 1420 (1971).  "[S]uch inferences and conclusions as the [Commissioner] may
20   reasonably draw from the evidence" will also be upheld.  *Beane v. Richardson*, 457
21   F.2d 758, 759 (9th Cir. 1972); *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).
22   On review, the court considers the record as a whole, not just the evidence supporting
23   the decision of the Commissioner.  *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir.
24   1989); *Thompson v. Schweiker*, 665 F.2d 936, 939 (9th Cir. 1982).

25    It is the role of the trier of fact, not this court to resolve conflicts in evidence.
26   *Richardson*, 402 U.S. at 400.  If evidence supports more than one rational
27   interpretation, the court must uphold the decision of the ALJ.  *Allen v. Heckler*, 749
28   F.2d 577, 579 (9th Cir. 1984).

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 2**

1  A decision supported by substantial evidence will still be set aside if the proper
2  legal standards were not applied in weighing the evidence and making the decision.
3  *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir.
4  1987).

6                                    **ISSUES**
7  Plaintiff argues the ALJ  erred in:  1) rejecting the opinions of Plaintiff's
8  treating physician, Chang Shin, M.D.; 2) failing to develop the record to ascertain
9  whether Plaintiff's headaches constitute a condition equaling Listing 11.02; 3)
10 discounting Plaintiff's testimony about her symptoms and limitations; and 4) finding
11 that Plaintiff was capable of performing her past relevant work as an order filler.

13                                  **DISCUSSION**
14 **SEQUENTIAL EVALUATION PROCESS**
15 The Social Security Act defines "disability" as the "inability to engage in any
16 substantial gainful activity by reason of any medically determinable physical or
17 mental impairment which can be expected to result in death or which has lasted or can
18 be expected to last for a continuous period of not less than twelve months."  42
19 U.S.C. § 1382c(a)(3)(A).  The Act also provides that a claimant shall be determined
20 to be under a disability only if her impairments are of such severity that the claimant
21 is not only unable to do her previous work but cannot, considering her age, education
22 and work experiences, engage in any other substantial gainful work which exists in
23 the national economy.  *Id.*
24 The Commissioner has established a five-step sequential evaluation process for
25 determining whether a person is disabled.  20 C.F.R. §§ 404.1520 and 416.920;
26 *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S.Ct. 2287 (1987).  Step one determines
27 if she is engaged in substantial gainful activities.  If she is, benefits are denied.  20
28 C.F.R. §§ 404.1520(a)(4)(I) and 416.920(a)(4)(I).  If she is not, the decision-maker

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 3**

1   proceeds to step two, which determines whether the claimant has a medically severe
2   impairment or combination of impairments.   20 C.F.R. §§ 404.1520(a)(4)(ii) and
3   416.920(a)(4)(ii).  If the claimant does not have a severe impairment or combination
4   of impairments, the disability claim is denied.   If the impairment is severe, the
5   evaluation proceeds to the third step, which compares the claimant's impairment with
6   a number of listed impairments acknowledged by the Commissioner to be so severe
7   as to preclude substantial gainful activity.    20 C.F.R. §§ 404.1520(a)(4)(iii) and
8   416.920(a)(4)(iii); 20 C.F.R. § 404 Subpart P, App. 1.  If the impairment meets or
9   equals one of the listed impairments, the claimant is conclusively presumed to be
10  disabled.   If the impairment is not one conclusively presumed to be disabling, the
11  evaluation proceeds to the fourth step which determines whether the impairment
12  prevents the claimant from performing work she has performed in the past.  If the
13  claimant is able to perform her previous work, she is not disabled.  20 C.F.R. §§
14  404.1520(a)(4)(iv) and  416.920(a)(4)(iv).  If the claimant cannot perform this work,
15  the fifth and final step in the process determines whether she is able to perform other
16  work in the national economy in view of her age, education and work experience.  20
17  C.F.R. §§ 404.1520(a)(4)(v) and 416.920(a)(4)(v).

18       The initial burden of proof rests upon the claimant to establish a prima facie
19  case of entitlement to disability benefits.  *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th
20  Cir. 1971).   The initial burden is met once a claimant establishes that a physical or
21  mental impairment prevents her from engaging in her previous occupation.   The
22  burden then shifts to the Commissioner to show (1) that the claimant can perform
23  other substantial gainful activity and (2) that a "significant number of jobs exist in the
24  national economy" which claimant can perform.  *Kail v. Heckler*, 722 F.2d 1496,
25  1498 (9th Cir. 1984).

26

27  **ALJ'S FINDINGS**

28       The ALJ found the following: 1) Plaintiff has "severe" medical impairments,

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 4**

those being coronary artery disease status-post myocardial infarction and stenting; chronic obstructive pulmonary disease (COPD); cervical degenerative disc disease; headaches; and blindness of the right eve; 2) Plaintiff's impairments do not meet or equal any of the impairments listed in 20 C.F.R. § 404 Subpart P, App. 1; 3) Plaintiff has the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), but cannot climb ladders, ropes and scaffolds; cannot work around unprotected heights and dangerous moving machinery; cannot perform jobs that require the ability to judge distances and spatial relationship due to loss of depth perception; and cannot have concentrated exposure to respiratory irritants; and 4) this RFC allows Plaintiff to perform her past work as an order filler. Accordingly, the ALJ concluded that Plaintiff is not disabled.

## MEDICAL OPINIONS

It is settled law in the Ninth Circuit that in a disability proceeding, the opinion of a licensed treating or examining physician or psychologist is given special weight because of his/her familiarity with the claimant and his/her condition. If the treating or examining physician's or psychologist's opinion is not contradicted, it can be rejected only for clear and convincing reasons. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). If contradicted, the ALJ may reject the opinion if specific, legitimate reasons that are supported by substantial evidence are given. *Id*. "[W]hen evaluating conflicting medical opinions, an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). The opinion of a non-examining medical advisor/expert need not be discounted and may serve as substantial evidence when it is supported by other evidence in the record and consistent with the other evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

Plaintiff's treating physician, Chang Shin, M.D., a neurologist, began treating

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 5**

the Plaintiff in 1999 for issues related to her headaches and continued to treat her monthly through the date of the ALJ's decision. (AR at p. 995).  In his decision, the ALJ acknowledged that "physical examinations revealed tenderness to palpation in the cervical paraspinals and diminished range of motion in the cervical spine."  (AR at p. 21).  The ALJ noted that imaging performed in 2012 showed degenerative disc disease of the cervical spine with spinal stenosis.  (*Id*.).  See also AR at pp. 902-03.  The ALJ further noted there had been imaging in July 2015 and opined it "**appeared** to show improvement and revealed only early osteoarthritic changes with small anterior spur-fan-nation noted at levels C5-6 and [C]6-7."  (*Id*.)(emphasis added).  The ALJ pointed out that results of the 2015 imaging indicated the posterior elements of the cervical spine were normal, the paraspinal soft tissues were normal, and that the vertebral body heights and disc space heights were normal.  (*Id.*).  This led the ALJ to opine that "[c]linical findings **seem** consistent with only early degenerative changes in the cervical spine."  (*Id.*)(emphasis added).  There is no indication in the record, however, that any medical provider opined either that the July 2015 imaging appeared to show improvement or seemed consistent with only early degenerative changes in the cervical spine.  James K. Symonds, M.D., who was responsible for ordering the 2015 imaging, offered no such opinions and indeed, there is no indication he reviewed the results of the imaging which took place in 2012.

Dr. Symonds conducted a consultative examination of the Plaintiff on July 21, 2015, at the behest of the Commissioner.  Plaintiff informed Dr. Symonds that she began having neck pain in 1982 and was treated conservatively until two years ago.  (AR at p. 980).  Plaintiff advised that she had an "x-ray" and was told she had spinal stenosis of her cervical spine.  (*Id.*).  She also advised that she had a right-sided headache which she described as a migraine which began in 1982.  (*Id.*).  Dr. Symonds observed that Plaintiff's neck was tender in the right cervical spine and there was a diminished range of motion, specifically decreased flexion.  (AR at p. 982).  He indicated that her "[r]ight frontal headaches [were] probably secondary to

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 6**

1    her neck pain." (AR at p. 984).   The doctor's "Functional Assessment" was as

2    follows:

3              Based on the examination today[,] the claimant can lift and
               carry 20 pounds occasionally and 10 pounds frequently.  The
4              claimant can stand and walk for 6 hours in an eight hour day.
               The claimant can sit for 6 hours in an eight hour day.  There
5              should be frequent changes in the sitting and standing position.

6    (*Id.*).

7          The ALJ gave partial weight to the opinion from Dr. Symonds.  The ALJ found

8    his opinion regarding Plaintiff's ability to perform lifting, carrying, sitting and

9    standing activities consistent with "light exertion"[1] was "supported by the

10   longitudinal evidence of record, including the [Plaintiff's] physical examinations,

11   imaging, and activities . . .   ."  (AR at p. 24).  The ALJ assigned less weight,

12   however, to Dr. Symond's opinion that Plaintiff should have frequent changes in

13   sitting and standing positions.  (*Id.*).  According to the ALJ, "Dr. Symonds did not

14   provide rationale for a sit/stand limitation, nor is it supported by objective evidence,

15   like a lower back impairment, that would reasonably warrant a sit/stand limitation."

16   (*Id.*).

17         Here again, the ALJ did not cite any medical opinion in support of his assertion

18   that a sit/stand limitation was not supported by objective evidence.  Indeed, it is noted

19   that Dr. Shin, Plaintiff's treating physician, agreed that Plaintiff required a sit/stand

20   option.  (AR at p. 24).   The symptoms of degenerative disc disease, be it in the

21   cervical spine or the lumbar spine, include reduced pain when changing positions

22

23         [1] 20 C.F.R. §§ 404.1567(b) and 416.967(b) define "light" work as involving

24

25   lifting no more than 20 pounds at a time with frequent lifting or carrying of objects

26   weighing up to 10 pounds.  It involves a good deal of walking or standing, or

27

28   sitting most of the time with some pushing and pulling of arm or leg controls.

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 7**

frequently, rather than remaining seated or standing for prolonged periods. https://www.spinehealth.com/conditions/degenerative-disc-disease/common-symptoms-degenerative-disc-disease.

The non-examining state agency physicians did not offer any opinion on Dr. Symond's sit/stand limitation, assigning Dr. Symond's opinion "other weight" only because the shoulder limitations he opined were not supported by "alternative evidence." (AR at pp. 87, 100, 119 and 136 ). The shoulder limitations opined by Dr. Symonds (manipulative limitations of reaching with bilateral shoulders) were due to Plaintiff's complaints about dyspnea (shortness of breath) upon exertion, but the doctor acknowledged this was supported by "little objective evidence." (AR at p. 984). The non-examining state agency physicians otherwise agreed with the exertional limitations opined by Dr. Symonds ("light" work). While Dr. Symonds could not have reviewed the exertional limitations opined by Plaintiff's treating physician, Dr. Shin, which were rendered in August 2015, it appears that opinion was available to the non-examining physicians as "reconsideration evidence" during the reconsideration process in early 2016. (AR at pp. 112 and 129). Either the state agency physicians overlooked it or disregarded it. Accordingly, no physician specifically addressed Dr. Shin's August 2015 opinion which was that as a result of Plaintiff's "intractable headache with cervicogenic component,"[2] she should never lift 10-20 pounds, could occasionally lift 5-10 pounds, could frequently lift 0-5 pounds, should never carry 20-50 pounds, could occasionally carry 10-20 pounds, and could

---

[2] A cervicogenic headache is a secondary headache caused by a problem in the neck region, such as cervical degenerative disease. Symptoms include pain on one side of the head that bears similarity to a migraine headache.

https://www.webmd.com/migraines-headaches/cervicogenic-headache-facts_#1

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 8**

frequently carry 5-10 pounds.  (AR at p. 998).

The ALJ gave little weight to Dr. Shin's opinion because he did not provide "completed evaluations with objective findings consistent with such limitations." (AR at p. 25).  Dr. Shin, however, was asked to identify the laboratory and diagnostic test results which supported his diagnosis and he noted the heretofore mentioned "MRI finding of multilevel neuroforaminal [and] central canal stenosis."  (AR at p. 996).  And he was asked to identify the positive clinical findings supporting his diagnosis and he stated it was Plaintiff's neck pain which was "diffusely worse on the right than the left."  (AR at p. 995).

The ALJ also found Dr. Shin's opinion inconsistent with his treatment notes which "noted the [Plaintiff's] complaints of pain were zero or minimal at the time of treatment, and indicated that her pain was primarily located in her head."  (AR at p. 25).  Clearly, there is nothing unusual about pain being primarily located in the head as the result of an underlying neck condition.  Furthermore, while it is true that in the treatment notes singled out by the ALJ dating from February 2017 to February 2018, Plaintiff indicated her pain "right now" at the time of the appointment was "0," she also indicated that her pain level ranged from "0" to "7" or "8," classified as "severe" (AR at pp. 1181; 1185; 1188; 1191; 1197; and 1199).  In two of those reports, Plaintiff indicated her "average" pain rated a "7" (AR at pp. 1191 and 1199).  The fact Plaintiff periodically experienced no headache pain is not necessarily inconsistent with Dr. Shin's opinion regarding Plaintiff's limitations.

The ALJ added that "despite [Plaintiff's] . . . long-standing complaints of headache, [she] performed light to medium work through 2014 with no documentation of any change in her condition to warrant this 10-pound lifting restriction."  (AR at p. 25).  Plaintiff, however, did not perform work "through 2014," as the record indicates she quit her last job in May of 2014.  (AR at pp. 278 and 956). Upon questioning by the ALJ, Plaintiff testified that she was experiencing headaches on her last job, but was allowed to go home when necessary without getting into

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 9**

trouble with her employer or causing any problem for her employer.  (AR at pp. 53-54).  Dr. Shin's records show that Plaintiff suffered from headaches of varying severity during his treatment of her starting in 1999. (AR at pp. 683-894).  These headaches did not stop Plaintiff from continuing to work until May 2014.  It is noted, however, that in 1999, and again in 2000 and 2001, Dr. Shin completed a form advising Plaintiff's employer she would require a day off "here and there" because of her migraines (AR at pp. 908-10, 915), and in December 2009, he completed a form for Plaintiff to take a leave of absence for up to 12 days a year, if needed.  (AR at p. 788).  The first time Dr. Shin opined about a lifting/carrying limitation was in 2015, after Plaintiff had left her last job.  It is reasonable to presume that at that time, the doctor took Plaintiff's advanced age (58) into consideration, in combination with her headaches for which a cervicogenic origin was not established until September 2012 at the earliest.

For all of the reasons discussed above, the ALJ did not offer legitimate reasons for accepting the opinions of the non-examining state agency physicians and consultative examiner, Dr. Symonds, regarding Plaintiff's lifting and carrying capabilities,   instead of the lifting and carrying capabilities opined by Plaintiff's treating physician, Dr. Shin.  Nor did the ALJ offer a legitimate reason for rejecting Dr. Shin's opinion that Plaintiff required a sit/stand option, an opinion shared by Dr. Symonds and as to which the state agency physicians did not take issue.

**TESTIMONY RE SYMPTOMS AND LIMITATIONS**

Where, as here, the Plaintiff has produced objective medical evidence of an underlying impairment that could reasonably give rise to some degree of the symptoms alleged, and there is no affirmative evidence of malingering, the ALJ's reasons for rejecting the Plaintiff's testimony must be clear and convincing.  *Garrison v. Colvin*, 759 F.3d 95, 1014 (9th Cir. 2014); *Burrell v. Colvin,* 775 F.3d 1133, 1137 (9th Cir. 2014).  If an ALJ finds a claimant's subjective assessment unreliable, "the

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 10**

ALJ must make a credibility determination with findings sufficiently specific to permit [a reviewing] court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony."    *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir.2002). Among other things, the ALJ may consider:   1) the claimant's reputation for truthfulness;  2) inconsistencies in the claimant's testimony or between her testimony and her conduct; 3) the claimant's daily living activities; 4) the claimant's work record; and 5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition.  *Id*.   Subjective testimony cannot be rejected solely because it is not corroborated by objective medical findings, but medical evidence is a relevant factor in determining the severity of a claimant's impairments. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." (AR at p. 20).  As discussed above, the medical evidence is consistent with Plaintiff being limited to lifting 10 pounds and being allowed to sit and stand at will at any type of job.

The ALJ found Plaintiff's allegations were "not entirely consistent with her self-reports and reported activities" including having no problems with performing self-care activities such as dressing, bathing, caring for her hair, and shaving; walking around her block twice daily; and grocery shopping one to two times per week, which takes her two to three hours.  (AR at p. 23).  "The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits . . . and many home activities are not easily transferable to what may be the more grueling environment of the workplace where it might be impossible to periodically rest or take medication." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  "[T]he mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from . . . credibility as to overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir.

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 11**

2001).  Rather, "[i]t is only where the level of activity is inconsistent with a claimed limitation that the activity has any bearing on credibility." *Id*.  Daily activities therefore "may be grounds for an adverse credibility finding if a claimant is able to spend a substantial part of h[er] day engaged in pursuits involving physical functions that are transferable to a work setting." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).  To conclude that a claimant's daily activities warrant an adverse credibility determination, the ALJ must make specific findings relating to the daily activities and the transferability of the activities to the workplace.  *Id*.

The activities cited by the ALJ, self-care, walking around the block, and grocery shopping, are not inconsistent with Plaintiff being limited to lifting no more than 10 pounds and requiring a sit/stand option in the workplace.  The ALJ did not offer clear and convincing reasons for discounting Plaintiff's testimony that her symptoms are severe enough to justify these limitations.

**REMAND**

Social security cases are subject to the ordinary remand rule which is that when "the record before the agency does not support the agency action, . . . the agency has not considered all the relevant factors, or . . . the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Treichler v. Commissioner of Social Security Administration*, 775 F.3d 1090, 1099 (9th Cir. 2014), quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744, 105 S.Ct. 1598 (1985).

In "rare circumstances," the court may reverse and remand for an immediate award of benefits instead of for additional proceedings.  *Id*., citing 42 U.S.C. §405(g). Three elements must be satisfied in order to justify such a remand.  The first element is whether the "ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion." *Id.* at 1100, quoting

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 12**

1   *Garrison v. Colvin*, 759 F.3d 995, 1020 (9ᵗʰ Cir. 2014).   If the ALJ has so erred, the
2   second element is whether there are "outstanding issues that must be resolved before
3   a determination of disability can be made," and whether further administrative
4   proceedings would be useful.   *Id*. at 1101, quoting *Moisa v. Barnhart*, 367 F.3d 882,
5   887 (9ᵗʰ Cir. 2004).   "Where there is conflicting evidence, and not all essential factual
6   issues have been resolved, a remand for an award of benefits is inappropriate."   *Id*.
7   Finally, if it is concluded that no outstanding issues remain and further proceedings
8   would not be useful, the court may find the relevant testimony credible as a matter of
9   law and then determine whether the record, taken as a whole, leaves "not the slightest
10  uncertainty as to the outcome of [the] proceedings."   *Id*., quoting *NLRB v. Wyman-
11  Gordon Co.*, 394 U.S. 759, 766 n. 6 (1969).   Where all three elements are satisfied-
12  ALJ has failed to provide legally sufficient reasons for rejecting evidence, there are
13  no outstanding issues that must be resolved, and there is no question the claimant is
14  disabled- the court has discretion to depart from the ordinary remand rule and remand
15  for an immediate award of benefits.   *Id*.   But even when those "rare circumstances"
16  exist, "[t]he decision whether to remand a case for additional evidence or simply to
17  award benefits is in [the court's] discretion."   *Id*. at 1102, quoting *Swenson v.
18  Sullivan*, 876 F.2d 683, 689 (9ᵗʰ Cir. 1989).

19       The ALJ failed to provide legally sufficient reasons for rejecting the opinions
20  of Plaintiff's treating physician regarding Plaintiff's limitations, and failed to provide
21  legally sufficient reasons for discounting Plaintiff's testimony regarding the severity
22  of her symptoms.   Plaintiff's limitations, specifically her not being able to lift more
23  than 10 pounds and needing to sit and stand at will, means she cannot perform "light"
24  work and is limited to performing "sedentary" work as defined in 20 C.F.R. §§
25  404.1567(a) and 416.967(a).[3]   Consequently, as acknowledged by the ALJ at the

26

27  _____

28       [3] "Sedentary" work involves lifting no more than 10 pounds at a time and

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 13**

hearing, Plaintiff is precluded from performing all of her past relevant work because none of that work was "sedentary." (AR at p. 66). Furthermore, because Plaintiff needs to sit and stand at will, she is precluded from performing the full range of "sedentary" work. Social Security Ruling (SSR) 96-9p. On remand, Plaintiff's lifting limitation and her need to alternate sitting and standing frequently have to be presented to the VE, along with the non-exertional limitations found by the ALJ, to determine at step five whether there are "sedentary" jobs in significant numbers in the national economy which the Plaintiff is capable of performing. Because Plaintiff is of advanced age (55 or older), transferability of skills to other work will need to be considered. 20 C.F.R. §§ 404.1568(d)(4) and 416.968(d)(4).[4]

## CONCLUSION

Plaintiff's Motion For Summary Judgment (ECF No. 15) is **GRANTED** and Defendant's Motion For Summary Judgment (ECF No. 17) is **DENIED**.

---

occasionally lifting or carrying articles like docket files, ledgers, and small tools. It primarily involves sitting, although walking and standing may be required occasionally.

[4] On remand, Plaintiff is not precluded from asking the ALJ to develop the record regarding whether Plaintiff's headaches occur with enough frequency to equal Listing 11.02. Plaintiff's counsel did not include this argument in his pre-hearing memorandum (AR at pp. 338-40) and did not advance it at the hearing. Therefore, the court is not obliged to determine at this time whether the ALJ erred in not developing the record.

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 14**

Pursuant to sentence four of 42 U.S.C. §405(g), the Commissioner's decision is **REVERSED** and **REMANDED** for further administrative proceedings consistent with this order.

**IT IS SO ORDERED.**    The District Executive shall enter judgment accordingly, forward copies of the judgment and this order to counsel of record, and **close the case**.

**DATED** this ___19th___ day of May, 2020.

LONNY R. SUKO
Senior United States District Judge

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT- 15**